Good morning to the panel. Matthew Dawson on behalf of Appellant William L. England. And I'd like to reserve two minutes of my time for rebuttal with the Court's permission. Mr. England appeals this morning because the courts below failed to properly apply summary judgment standards, failed to credit evidence that he clearly presented to them, and failed to afford him the leniency the Ninth Circuit usually requires with respect to pro se inmates. As a result, Mr. England presents three very narrow arguments to the panel. The first is whether an inmate is entitled to a religious diet that does not cause him physical discomfort or to which he is not allergic. And the evidence in the record is very clear that between 2000 and 2000. Why doesn't the halal diet, which is vegetarian, satisfy that requirement? So the vegetarian meal that's an ovo-lacto diet is heavy in lactose. And it certainly may satisfy the halal dietary requirement, but Mr. England is lactose intolerant. And so he's essentially allergic to the lactose-heavy meal. And there's evidence in the record presented in Mr. England's sworn testimony that he was actually forced to seek repeated medical treatment in order to continue eating the lactose-heavy meals. Scalia. Let me start again, because I want to go through the facts, if I can. Of course, Your Honor. As I understand it, your client was incarcerated in the Nevada Correctional Center? Yes, I believe so. When did he get incarcerated? The record's not clear on that point, Your Honor. Well, that's why I was asking you. He didn't even request a special meal until June 12, 2011, did he? The record's not clear what his dietary situation was. Well, the record is clear when he requested. Yes. So he requested admittance to the kosher meal program in June of 2011. Yeah. He was granted that admittance. Well, when did he get into the center? How long was he there before he even requested a meal? My understanding is that Mr. Englund was a repeated guest of the state of Nevada for a number of years. Well, that's the thing that worried me just a little bit. So, absolutely, and that's – I think the issue as to how long it took Mr. Englund to request a meal goes to the sincerity of his religious beliefs. I think it absolutely does, so we can get there, but I just wanted to make sure about that. Then, on June the 12th, he requests an MRE diet, right? I'm sorry? On June the 12th, he requested the MRE diet, right? Yes, in June of 2011, he requested the kosher meal. And then the request was granted for a while, but then it was taken away, and he was told he had to do a vegetarian diet, right? Correct. When did he have to do the vegetarian diet? So he had to do the vegetarian diet between the time he was removed from the kosher meal program. I don't want a general. When is it that he was told he had to eat the vegetarian diet? That's not in the record, is it? He was removed from the program in – He was removed from the MRE diet. Yes. But when? In July 22, 2011. He had a meeting with prison – July 22, 2000 – what? July 22, 2011. All right, and then the NDOC instituted a common fair diet in 2012, right? Yes. And the common fair diet was available to everyone, and there were no religious dietary needs which weren't accommodated by the common fair diet. But he didn't think it was right, so he just refused. So after forcing Mr. Ringland to eat the lactose-heavy vegetarian meal – Hold on just a minute. I want you to answer my question. Of course. He went to the vegetarian diet. We now know when that was. They instituted the common fair diet, and that was in 2012, the beginning of 2012. He was approved for that diet, and then he says, I don't want it anymore. Yes, and so he was approved. So the best time we can say he has any problem is from July 22, 2011 to June 21, 2012, right? I believe that he was granted admittance to the common fair religious diet. That was on February. Yes. And so then he requested to be removed in June. May or June, yes. Well, June 21 is what I got from your brief. Okay. Okay. So the best we got is then if there's any problem whatsoever, it's from July 22 to June 21 of the next year. Yes, Your Honor. I would agree with that. Because the CFD diet, there's nothing in this record that suggests he couldn't have eaten that, right? So what Mr. Ringland has said is that he had concerns that the CFD diet was not – But his concerns are not evidence that he couldn't have eaten that. I mean, I can be concerned that I shouldn't eat this and I shouldn't eat that, but I'm looking for something in this record that says he couldn't have eaten that. There is nothing. I agree with you that on appeal he has chosen to narrow his claims to the period that we've discussed, between the summer of 2011 and early to mid-2012. So the best is that. Yes. Okay. So tell me, why have you not waived this argument? Why has your client not waived it? So all of these facts and issues were presented to the court below. Well, just a minute. There was a presentation of some of this right at first when the complaint was dismissed, but after that it doesn't come back until now. So if you have reviewed the briefing below, I think you will understand. Well, I've reviewed that we had a motion to dismiss at one time where he had all this stuff to say, but since then we haven't seen anything about it. So why isn't it waived? When I looked at the first amended complaint, we're not talking about the same thing we've got here. So I think Mr. Englund raised all of these issues, albeit in a haphazard fashion, before the courts below. Well, what I'm trying to do is see if he hasn't waived it, and I wanted your best effort to suggest he hadn't. So Mr. Englund, in moving for a preliminary injunction, and then in — The preliminary injunction is the only place he ever talks about it, and it was denied. Yes. And I believe that he also submitted some evidence to the Court in his reply brief to his own motion for summary judgment indicating to the Court that he sought medical treatment and was granted medical treatment by prison officials for the lactose intolerance. So I don't believe this issue was waived. I just believe that he chose to focus on the broader issue. You've got a good case to give me to suggest it wasn't waived when the only time the we ever talked about in the case, and it didn't come back again? Well, I don't have a case because the defendants themselves have not raised this issue. So I think the parties certainly haven't suggested this option. So you're saying they waived the waiver? Yes. That's a very meta argument, if you will. All right. I've read that a lot of times. Okay. Let's get then to it. Okay. If we get right to it, what are the factors I use in determining whether he should not have or he should have got it or he shouldn't have got it? What am I looking at? Aren't I looking at the Turner balancing test? So, yes. Assuming that we have established a sincere religious belief that was burdened by the physical discomfort he was suffering and the need for medical treatment, we then turn to the Turner factors. Okay. That's assuming that we have a sincere. I haven't talked about sincere. If I go through the Turner balancing test, how do you win? I think it's easy for us to win. As a threshold matter, Turner requires that there's a content-neutral regulation. There was a content-neutral regulation. Well, the regulation didn't. The only thing you've got at best is that your client is lactose intolerant. The regulation at issue is that Jewish prisoners are entitled to an expensive meal that nobody else is entitled to. I think on its face, that's a regulation that discriminates on the basis of religion, but it is not content-neutral. Again, if we look at the Turner factors, as long as we're looking at the Turner factors, it seems to me that that, who they give this, how much they give this, is certainly a rational connection between the state interest and the prison regulations. They had too much going out. They couldn't afford it all. They couldn't get through it all, and they gave your client as best they could, which was the vegetarian diet, and the only thing I got against the vegetarian diet in the whole record is that he was lactose intolerant. So Turner has four factors. I know. I'm concentrating on the first. So the first is that there's a rational connection between the policy and a penal objective. Cost control may certainly be a penal objective that's permissible under Turner, but the issue is that the cost control, according to the state, was required because white supremacists and neo-Nazi groups had infiltrated the kosher meal program and causing costs to explode. There's no rational connection between the goal of removing white supremacists from a kosher meal program by banning exclusively African-American members of the Nation of Islam. So in that Venn diagram between the white supremacists and black Nation of Islam members, there's just no overlap. And I have five seconds left in support where I'd like to reserve time. Okay. Thank you. Are you here to represent the white supremacists and neo-Nazis? Yes, I am, actually. They have a bad rep. Joseph Tartakovsky for the State of Nevada. May it please the Court. The reason that the magistrate judge didn't address this argument, this lactose intolerant argument, that he had a choice between being pious or going hungry, is that it was never made below. It appears nowhere in the complaint. It's not in his opposition to our motion for summary judgment. It's not in his opposition to the magistrate judge's report and recommendation. He didn't make the argument below because it makes no sense. The kosher meal has dairy in it. Kosher does not mean no dairy. Kosher means no milk and meat. But it has plenty of dairy. Eggplant parmesan is a kosher classic. It just wasn't brought up below, and it's been reformulated on appeal. Now, supposing he had made the argument, there's no proof to raise a genuine issue of material fact. First, look at what's missing. I mean, if he has essentially a medical problem so severe that he can't eat, surely he had some obligation to provide some medical corroboration. So where are the medical records here, for instance? It's your point that he's making a claim of lactose intolerance, but he hasn't bothered to introduce any evidence of it? That's right. My first line of argument is that he didn't make the argument below. Well, he did raise the argument, did he not, in his response to summary judgment. And the motion, it was kind of in a motion, was struck, but not in opposition to this summary judgment. He said something in his motion for summary judgment, which was struck. We know what he was getting at there. He was trying to copycat the Shakur case, which is the furthest an inmate has got with this. So he says, I'm just like the Shakur inmate. I have gastrointestinal illness. He copied and pasted that term, gastrointestinal illness. That's where he got it. The problem for him is that the inmate in Shakur was not arguing that he had a lactose intolerance problem. The inmate in Shakur was saying, I get sick because there's no meat. Well, and it seems to me that even if the argument he's making is that Shakur says he gets lactose intolerance, Shakur never says you get the meal. Shakur just says it's one of the factors you look at, right? That's right. That's the best we get out of Shakur, if I give it every intendment that they make. Right. Shakur is very different because the scenario in Shakur is that you have a kosher meal program and you have Islamic inmates that want on to the program. And so the question becomes how big of a deal is it for the prison to give this one Islamic inmate or a few of them this meal? This situation is different because all the Muslim inmates who wanted kosher meals were on the program. The accommodation sought in Shakur was already being granted. And the prison's question was how can we, given that the kosher meal program is unsustainable, how do we accommodate everyone going forward? So other than the meal, have you got anything to say about that? Yeah, one last point about that. This case, it is not the case here that the prison said there is a 7,000 percent spike in kosher meals in four years, blows a hole in the budget. It is not the case, and I really want to emphasize this, that the prison said, look, we're short on cash, so we're just going to give the Jewish inmates the fancy kosher meal, and the Islamic inmates, we're going to give you vegetarian and you've just got to deal with that. That's not what happened here. The reason is the only way to accommodate the Jewish inmates was to give them the kosher meal. Vegetarian meals were not kosher. So the only way to accommodate the Jews, which we're by law required to do, was to continue them on the old kosher until the common fare comes online. Islamic inmates, by contrast, could eat the vegetarian meal because it is halal. Now, the prison did not say to Mr. England, you're getting vegetarian, live with it. They said, look, we want to accommodate you. We want to get you halal meat. We're working on it. We're getting this common fare diet online. It will accommodate both Jewish and Muslim prisoners. Common fare is what they do in the Bureau of Prisons, I believe. And he was given vegetarian meals as a temporary thing during this interim between the old kosher and the introduction of the common fare. So that's why there's no equal protection problem. That's why this was fair, and that's why what the prison did was the only thing it could have done to make sure everyone got religious diets that were healthy, nutritious, complied with religious dictates, and were within the prison budget. I can move on to the non-recognition of Nation of Islam. This argument also does not appear in this argument as refocused and narrowed, as he says, about the Three Holy Days, not in the complaint, not in the opposition to the motion for summary judgment, not in the opposition to the report and recommendation. In any event, the answer is the same. Every prison has a system by which it recognizes new claimed religions. Nevada recognizes 28 religions now. New religions are being added all the time. You need to have a rational basis because you have to be careful about this. You have to separate bona fide religions from political movements or prison gangs. When something is recognized as a religion, they get private meeting time. You have to be careful about who gets that. What happened here is that some inmates, Mr. England among them, said we want Nation of Islam to be recognized formally. It's not clear when exactly they said that. The prison said, great, submit the paperwork. It will go to the committee. It will be processed like it is with every other religious group. And at the end of that process, the Nation of Islam was, in fact, recognized as a religion. They got what they wanted. The process was followed. But isn't it also a fact, and this is what I'm making sure about, that even dating back to 2011 when he first makes any request at all, though we don't know when he first went to the prison, that they were allowed their own group worship even though not recognized. That's correct. It's unrebutted that as early as 2009 they were informally recognized. They just weren't in the manual yet until they asked. Is there anything in the record? I mean, I say a general argument about denying certain religious rites and practices, but I didn't find any argument about what practices or what rites. I didn't find it. Is it in there? No, and I tried to figure out what he was actually talking about. He says that we're not allowed to practice Nation of Islam in the way we want, which is sort of a, you know, I think maybe it had something to do with when they got their meals or the time that services started, but I could not figure out what exactly they were talking about. Well, it was hard for me to apply the Turner factors without knowing what it is they're talking about. So I wondered if you could, or maybe he never got to the argument, but I would have asked him the same thing. I don't know what he's talking about. The only difference is the three holy days get added to the manual. That's the only difference between Nation of Islam and traditionalism. So the matter should just continue. What is the effect of adding Nation of Islam to the manual? The effect is that on the holy days you get one extra hour of chapel on those days. So three extra hours in the year. Does the recognition of the Nation of Islam incorporate their holy days? What it means is that on those holy days you get an extra hour in the chapel. Do we know what holy days those are? I do, yeah. Day of Atonement, Savior's Day, and birthday of Elijah and Muhammad. So it's three hours, not to diminish it. But it's not in the record. No, he didn't make this clear to the prisoner or the judge that this was. I mean, I appreciate you know, but, I mean, I tried to find out. I couldn't find it. Yeah. So unless you have any other questions, Your Honors. No, thank you. Thank you very much. All right. Mr. Dawson, we'll give you an additional minute, not just five seconds. Thank you, Your Honor. I was going to have to speak very quickly. So as a threshold matter, I think the Nevada Attorney General's Office just raised a waiver argument that it never presented in its briefing and made a number of factual representations that it's never made before and that go well beyond the record. With respect to the issue of how much lactose is in the kosher meal versus how much lactose is in the lactose-heavy vegetarian meal, that's a factual issue that goes to possibly the amount of damages that Mr. England suffered. It's a factual issue that should be debated before the Court below and not resolved on summary judgment, either by the lower court or by this Court. With respect to it, there's some suggestion that Mr. England did not present evidence of his lactose intolerance. Mr. England presented sworn testimony in an affidavit. Where? It's page 240 of the excerpt of the record. I understand. But in what did he present that? So it seems to me that the only time he ever presented anything that could give me any idea about what he's talking about was not in what we've got in front of us now, but it was in the preliminary injunction. Or, or, at best, it was in his motion for summary judgment, which was struck. So the opening brief and the supporting exhibits to his motion for summary judgment were struck. His reply brief and the evidence that he submitted along with that were not. With that, I believe I am out of time. That's the best you got? Yes. Okay. Well, I'm trying to figure it out, because that's where I'm looking at. Okay, thank you. Thank you, Your Honor. For answering my questions. The case of England v. Walsh will be submitted. Court thanks counsel for their oral argument. And we proceed to the next case on the calendar, which is Cesar Alcaraz Enriquez v. Sessions.
judges: Bea, N.R. Smith, Nye